Gmail

*Exhibit A*
*Email to WPXI*
*with no response*

Felix Brizuela <fbrizuela13@gmail.com>

---

### Your story on Dr. Felix Brizuela
1 message

**Felix Brizuela** <fbrizuela13@gmail.com>  Tue, May 28, 2019 at 2:12 PM
To: target11@wpxi.com

This is Felix Brizuela. I am trying to keep my medical license in light of this witchhunt which has to do with war on Doctors, war on opiates with push to opiate prohibition disregarding that 11% of the populations suffers from life threatening severe pain which is daily. Attached is letter I wrote to the PA state medical Board. This is the real story. I think you will be at least slightly surprised.

Sincerely,

Felix Brizuela D.O.

---

📄 **letter to pa medical board.docx**
19K

get indicted, and not the Doctors that started the patients on opiates. In the neuropathy patients that I treated with opiates, 3 of 5, if I would have seen them before they were started on opiates, they probably would not have needed them for example 2 patients had CIDP. By the time I diagnosed them, they were already opiate dependent for their pain due to being started on opiates by other Doctors, and I would have treated them with IVIG before they developed facilitation and ultimately chronic pain. I would like to summarize the 5 patients I was convicted on. Note that the counts were on specific scripts. What didn't make any sense is that I would write the same script for the same reason at the same dose on consecutive months and I was charged on one month but not the other!! I would like to note as well that all patients received doses of opiates that were below 90 morphine equivalents. As suggested by the 2016 CDC guidelines.

PATIENT 1- Came to see me with severe neck pain. She had passed out and fallen off a horse. She had a documented history of having witnessed seizure in the past. On examinations, she had severe restriction of range of motion in her neck, with tonic contractions consistent with cervical dystonia or spasmodic torticollis. Like all other patients, she had already been on ongoing treatment with opiates for her pain. I was concerned about her passing out on multiple occasions and suggested that she may be an epileptic. Her mother got very upset when I brought up epilepsy and absolutely forbid her form going on seizure medications!! The patient appeared to be very intimidated by mother. The patient was in her late twenties, but her mother wanted to dictate her care. I put her on oxycodone 10 mg three times a day, well below 2016 CDC guidelines. The standard of care for spasmodic torticollis is Botox. Patient had no insurance initially and couldn't afford Botox.  She ultimately received Botox on 2 occasions. Had a modest to good response, but by the time I diagnosed her, she had developed facilitation and requited opiates for pain. I couldn't control when she saw me. If I would have seen her much earlier, she probably wouldn't had needed opiates. On subsequent visits, she had episodes of altered awareness and on 2 occasions she was pulled over by police and was found disoriented. The mother claimed that this was due to the opiates I was giving her, although she was fully lucid and engaging with no evidence of altered awareness on subsequent exams and she was clearly taking the medications I was prescribing and whatever drugs she was taking from other doctors.  She was taking benzodiazepams from other Doctor, which I couldn't stop since she had been on it for quite some time, and it clearly was not having a negative effect on her.  I was concerned that these episodes of altered awareness were due to epilepsy. I ordered and EEG, but mother absolutely forbid her daughter from having it. I went ahead and put her on Topamax anyway, and the mother kept demanding that I take her off it. I refused since I was pretty convinced that she had epilepsy. Note that she passed out when she fell of the horse and I felt that she may have passed out and this is what made her fall off the horse. Just prior to her seeing me for the first times, she had a witnessed seizure which the mother had admitted to seeing. She felt that she fell and hit her head on the fireplace and this is what made her have the seizure, but it was clear to me that she had the seizure resulting in the minor head trauma. I felt that a seizure episode is what lead to the injury that resulted in the spasmodic torticollis which was the cause of her chronic pain. She subsequently had an EEG which showed spreading polyphasic theta consistent with epilepsy. In the interim, she was seen an average of every 3 months, she had been tried on Botox and Zanaflex as alternative

therapies for her torticollis with modest response at best, which is why we kept her on the oxycodone. Her torticollis appeared to be worsening, perhaps due subsequent injuries from seizure activity. Her oxycodone was subsequently increased to 30 mg tid due to ongoing pain. Just at the 90 morphine equivalents suggested by 2016 CDC guidelines. Despite 2-3 inconsistent drug screens, which I discussed with her and did not "kick her out" as suggested by 2016 CDC guidelines, she was clearly taking her medication and never had the appearance of being over medicated on subsequent exams. The mother kept insisting that she didn't have epilepsy despite history and abnormal EEG. After the EEG, patient mysteriously kept missing or not showing up for office visits. She missed approximately 9 office visits over one year. I was concerned about her epilepsy. I wrote her a letter stating that I would have to report her if she didn't show up for her visits or at least call me to let me know how she is doing. After missing her ninth visit, I reported the periods of "altered awareness" to the WV DMV, which I was not only justified in doing, but it was my duty. They pulled her license to drive, and she did not get it back for 2 years. In the trial, patient didn't come in testify, but mother showed up in her place claiming that she had started a new job. I couldn't believe the court allowed this, since spasmodic torticollis is a chronic condition. I wanted the jury to see her. I asked my attorney to force her to come in, but for reasons that to this date I cannot understand, he was reluctant. The mother said under oath that she had never had a seizure, which I was shocked at considering that despite mothers insisting she was not at epileptic, mother admitted to seeing a seizure in the past on more than one occasion, which was documented on the records. The mother admitted under oath that her daughter had these "headache" periods in which she would be none functional, and patient's daughter was living with patients' mother, which I found strange. The prosecution insisted that I pulled the patients license due to mother reporting me to the state medical board (I had a previous disciplinary action with the West Virginia board, this was the case. I should have contested that). This was absolutely not true. I did not receive notice of the disciplinary action until well after I reported her. This is on the record. I feel that the West Virginia Board and the court were negligent in ignoring the fact that the patient was an epileptic and clearly a danger to others. At one time, she had a head on collision with another vehicle. Yet, the mother and prosecution kept insisting that this was due to pain medication for her spasmodic torticollis. If she was not an epileptic, why did it take her 2 years to get her license back? I thought it was unjust for the jury to convict me on all but the one script. Again, I had excellent documentation, and the script and circumstances that I was convicted of were identical on the script I got convicted on and the one I didn't??

PATIENT 2: History of chronic back pain, 2 previous back surgeries. Previously on opiates for long standing history of back problems. In fact, had been on multiple opiates at one time from previous doctors. Fell 2 stories in his house, had to be life flighted to Allegheny General, MRI found disc hernations. Had multiple visits with consistent findings on physical exam consistent with radiculopathy, or "pinched nerve". Saw on average every 3 months, documented rational behind treatment. Had appropriate drug screens discussed any inconsistencies. Had to ultimately be kicked out due to multiple opiates in system. He testified against me in court stating that I made him a drug addict despite that fact that he was not opiate naïve and had been started on opiates by other Doctor, and admitted in court that he was still having pain and that he would buy drugs off the street to alleviate his pain. The court didn't bat an eye!!

·

·

PATIENT 3:  Came in complaining of severe leg pain, weakness and poor balance.  Had nerve studies done definitely consistent with chronic inflammatory demyelinating polyneuropathy.  Started on ivig, which is an FDA approved treatment for this condition.  Despite this, she kept having severe burning pain. Like the other patients, she was not opiate naïve.  She had been treated with opiates by other Doctors.  It was clear she had developed facilitation due to her condition being diagnosed and treated later.  Again, if I would have seen her earlier, we may have avoiding having to use opiate but it was what it was.  Seen every 3 months, had multiple urine drug screens, some of which came back questionable, but I later documented that she was getting benzo diazepam from other Physician (Psychiatrist). Had some changes in her opiates due to ongoing severe pain, some of which wasn't covered by insurance.  Excellent documentation of her progress and rational behind any adjustments on her medications or changes. Seen every 3 months. Doses prescribed were below the 90 morphine equivalents suggested by 2016 CDC guidelines.  Despite this, the jury convicted me on most of the scripts.  Again, most scripts were similar to the previous month's scripts, they charged me with some and not for others despite that fact that scripts were similar.

PATIENT 4:  History of severe back problems, disc herniations and surgeries in past.  Came to see me on oxycodone and wanted off opiates despite admitting to having on going pain. Wanted to go on suboxone to ween off opiates.  Warned that he had history of legitimate problems and that suboxone was not FDA approved for pain.  I put him on suboxone, he did ok despite some ongoing pain for about 4 months.  Then one day, he was helping a friend move and reinjured his back.  He hung in there with suboxone for about another month.  But the pain was too intense so I put him back on oxycodone, low dose 10 mg three times a day. MRI showed re-occurrence of herniation. The prosecution claimed that I inappropriately put a rehab patient on oxycodone.  It was not their place to make this call.  There again was excellent documentation, had appropriate drug screens showing compliance and the jury convicted me on most of the scripts!!  He was never on anything greater than 10 mg tid of oxycodone, far below the 90 morphine equivalents suggested by 2016 CDC guidelines, and the jury unjustly convicted me on most scripts.

PATIENT 5- Referred by suboxone clinic for neurological evaluation.  History of severe diabetic neuropathy with leg ulcers.  Suboxone was not controlling pain.  Came to see me, had severe neuropathy, very bad nerve conductions studies which I performed.  He was barely able to walk.  Put him on oxycodone 10 mg three times a day, far below the 90 morphine equivalents suggested by 2016 CDC guidelines.  The jury once again convicted me on most scripts, despite appropriate drug screens, excellent documentation, abnormal testing again justifying his complaint of chronic pain.  The prosecution argued that I put a rehab patient on opiates.  This was ludicrous!

The prosecution reviewed over 2000 charts, and these were the cases that they used.  It didn't make any sense to me how they would charge me with scripts that were identical to other scripts that I didn't get charged with.  The prosecutions main argument was that I had invested in a urine drug screen company and that I was "recruiting" pain patients just to make money.  First off, I was getting commission only on private patients.  None of the patients I got charged

with had private insurance. The jury did agree with me on these charges and I was acquitted on this alleged Medicare plot charges. But despite this, the jury convicted me as above. If the prosecutions argument was that I was recruiting pain patients to make money, and I proved that I was not making money off urine drug screens on the patients that I got charged on, how could the jury justify convicting me at all??

I do not feel that there was any evidence that I was treating and prescribing out of standard guidelines since, I was practicing well within 2016 CDC guidelines, there are no other standards to go by and the CDC admits that pain management is a very complicated process and has to be individualized based on specific patient needs. Once again, I argue that there was evidence beyond a shadow of a doubt that all of these patients had legitimate cause of chronic pain based on history, subsequent exams. Note as all that all patients had been treated with opiates on an ongoing basis prior to me seeing them, so the argument that I made them addicts is not true. Especially considering the doses I put them on, which was well below 2016 CDC guidelines. I do not feel that I should lose my medical license based on the above facts. There is a need for Neurologist in my area, and the patients that I have been treating will be hurt. They have tried to find other Neurologists since this has all come down on me, and are either not able to find one or cannot get the same level of care. And in fact, feel that my DEA certificate was unjustly pulled. I would like therefore to request a hearing. I am not able to afford counsel at this time.

Sincerely,

Felix Brizuela D.O.